CATHY J. STERLING, Guardian ad Litem for CHRISTOPHER T.S. STERLING, and CATHY J. STERLING, Individually, Plaintiffs/Appellants v. GIL SOUCY TRUCKING, LTD.; GUY CARON; CHARLES DEAN SMITH; and WALDENSIAN BAKERIES, INC., Defendants/Third-Party Plaintiffs/Appellees v. JENNIFER LEIGH LOWMAN; CLAYTON LEE LOWMAN; and SARAH ALLYSON WEST, Third-Party Defendants

No. COA00-560; COA00-886; COA00-963

(Filed 18 September 2001)

1. **Evidence— hearsay—school records—offered for impeachment**

    The trial court did not err in an automobile accident action by permitting the introduction of the school records of the minor plaintiff where the records were offered to impeach other testimony and not for the truth of the matter asserted.

2. **Appeal and Error— invited error–failure to object**

    Publication of the school records of the minor plaintiff to the jury was invited error where the trial court initially sustained plaintiffs' objection to the records being passed to the jury, plaintiffs implied during redirect that defendants had concealed favorable records from the jury, and the judge then allowed the records to be distributed to the jury. Furthermore, plaintiffs forfeited the right to appeal this issue where they failed to object to publication of the records to the jury.

3. **Evidence— pretrial order—school records not included— opportunity to examine**

    The trial court did not abuse its discretion in an automobile accident action by admitting the school records of the minor defendant even though plaintiffs objected on the grounds that they were not in the pretrial order. The court responded that plaintiffs would be given an opportunity to look at the records, plaintiffs did not argue that they were surprised by the records,

STERLING v. GIL SOUCY TRUCKING, LTD.

[146 N.C. App. 173 (2001)]

and plaintiffs did not request additional time to investigate and prepare rebuttal evidence.

### 4. Evidence— scientific article—foundation proper

The trial court did not err in an automobile accident action by admitting an article entitled "Myths of Neuropsychology" where the testimony of a defense expert in neuropsychology established the article as reliable scientific authority.

### 5. Costs— personal liability action—assignment of costs—court's discretion—not reviewable

There was no error in an automobile accident case involving several collisions where the court assigned all of the costs of two defendants to plaintiffs rather than apportioning those costs to codefendants and third-party defendants. A jury determined that the two defendants were not liable; N.C.G.S. § 6-19 does not allow costs as a matter of course in a personal injury action, so these two defendants made a motion under N.C.G.S. § 6-20; the court specifically stated that their costs were taxed against plaintiffs in the court's discretion; and the trial court's exercise of discretion under N.C.G.S. § 6-20 is not reviewable on appeal.

### 6. Contribution— standing to object to post-judgment settlements—no payment by objecting party

Defendants in an automobile accident action did not have standing to argue that plaintiffs' post-judgment settlements with third-party defendants were not proper under the Uniform Contribution Among Tortfeasors Act where these defendants had not yet paid their share, had suffered no harm, and cannot yet pursue a contribution claim. A contribution action is separate from the initial liability action and the right to seek contribution arises only when one joint tortfeasor has paid more than its share of the judgment. N.C.G.S. § 1B-1(b).

### 7. Compromise and Settlement— post-settlement judgments—all parties not included—good faith

The trial court did not abuse its discretion in an automobile accident case by concluding that post-judgment settlements between plaintiffs and third-party defendants constituted a full release given in good faith where transcripts of hearings reveal that the court gave careful consideration to the proposed settlements and to the ramification of settlement should a new trial be ordered. The approved settlements were for the precise amount

of the third-party defendants' pro rata share of the jury verdict and the court's determination appears to have been the result of a reasoned decision.

Judge GREENE concurring in the result.

Appeal by plaintiffs from judgment entered on 10 May 1999 by Judge Robert H. Hobgood in Durham County Superior Court (COA-560). Appeal by third-party plaintiffs from separate but related orders entered on 23 May 2000 (COA-886) and on 6 July 2000 (COA-963) by Judge Donald W. Stephens. This court, by order entered on 29 August 2000, allowed a motion to consolidate all cases for purposes of hearing only. This court on its own motion now orders that COA00-560, C0A00-886, and COA00-963 be consolidated for decision. Heard in the Court of Appeals on 15 May 2001.

> *Twiggs Abrams Strickland & Trehy, P.A. by Douglas B. Abrams for plaintiffs-appellants.*

> *Kennedy Covington Lobdell & Hickman, L.L.P. by F. Fincher Jarrell for defendants/third-party plaintiffs/appellees Gil Soucy Trucking, Ltd. and Guy Caron.*

> *Cranfill Sumner & Hartzog, L.L.P. by William W. Pollock for defendants/third party-plaintiffs/appellees Charles Dean Smith and Waldensian Bakeries, Inc.*

> *Bryant Patterson Covington & Idol, P.A. by Lee A. Patterson, II for third-party defendants Jennifer Leigh Lowman and Layton Lee Lowman.*

> *Haywood Denny & Miller, L.L.P. by George W. Miller, III for third party-defendant/appellee Sarah Allyson West.*

BRYANT, Judge.

The pertinent factual and procedural background is as follows: On 7 June 1996, Christopher Sterling (Christopher), then 13 years old, received serious injuries in a multi-vehicle accident. The accident arose when Jennifer Lowman lost control of her vehicle, the vehicle spun around and then came to a stop blocking both eastbound lanes of Interstate 40 near Valdese, North Carolina. Several vehicles traveling behind Lowman were forced to come to a sudden stop. As Sarah West (West) and her passenger, Christopher, approached the scene, West was unable to stop and her vehicle hit the last vehicle stopped

in the line of traffic. Neither Christopher nor West had any significant injury as a result of the first impact. West's stopped vehicle was then struck in the rear by a tractor trailer driven by Defendant Guy Caron (Caron) and owned by Gil Soucy Trucking, Ltd. (Soucy Trucking). West's vehicle was then pushed forward, causing it to strike the vehicles in front of it before bursting into flames. The tractor trailer driven by Caron was then struck in the rear by a second tractor trailer owned by Waldensian Bakeries, Inc. (Waldensian) and driven by Charles Dean Smith (Smith).

On 14 March 1997, Christopher and his mother, Cathy Sterling, (plaintiffs) filed suit against the four defendants Soucy Trucking, Caron, Waldensian and Smith. Defendants then filed a third-party complaint for contribution against Jennifer and Clayton Lowman and West. The case was tried before Judge Hobgood at the 22 March 1999 session of Durham County Superior Court. On 8 April 1999, the jury returned verdicts finding the following: Defendants/third-party plaintiffs Soucy Trucking and Caron liable; third-party defendants Jennifer and Clayton Lowman and West liable; defendants Waldensian and Smith not liable; that the costs of Waldensian and Smith be taxed against plaintiff; and awarding plaintiffs $62,500 in damages. Plaintiffs moved for a new trial pursuant to N.C. R.C.P., Rule 59. The motion was denied and plaintiffs filed a notice of appeal on 1 July 1999 (COA-560).

In April 2000, third-party defendants Jennifer and Clayton Lowman moved for an order approving a settlement between them and the plaintiffs. Shortly thereafter, third-party defendant West made a similar motion. The settlement between plaintiffs and the Lowmans was approved and entered on 23 May 2000. The settlement between plaintiffs and West was approved and entered on 6 July 2000.[1] Soucy Trucking and Caron gave notice of appeal on 21 June 2000 from the May 23 order approving the settlement between the plaintiffs and the Lowmans. (COA00-886) Soucy Trucking and Caron gave notice of appeal on 17 July 2000 from the July 6 order approving the settlement between the plaintiffs and West. (COA00-963)

In this consolidated decision we review the appeal by plaintiffs in Part I and the appeals by Soucy Trucking and Caron in Part II.

---

1. Following the settlements, plaintiffs moved to dismiss the appeals as to the Lowmans and West and this Court allowed the motion on 13 July 2000. Therefore, plaintiffs' appeal from the denial of their motion for new trial is against Soucy Trucking and Caron only.

STERLING v. GIL SOUCY TRUCKING, LTD.

[146 N.C. App. 173 (2001)]

## I. Appeal by plaintiffs Cathy and Christopher Sterling (COA00-560)

The issues on appeal raised by plaintiffs, Cathy and Christopher Sterling, are whether the trial court erred (A) in permitting introduction of Christopher's school records; (B) in permitting the introduction of an article by Carl B. Dodrill, Ph.D; and (C) in assigning all the costs of Defendant Waldensian to Plaintiffs rather than apportioning Waldensian's costs to co-defendants and third-party defendants. For the reasons stated below, we find no error by the trial court.

A.

[1] Plaintiffs argue that the trial court erred in permitting the introduction and publication of Christopher's records from the Emerson Waldorf School. Plaintiffs contend that the records were hearsay offered in violation of Rule 803(6) of the North Carolina Rules of Evidence and that the records were not included in any pre-trial order. We disagree.

A principle tenet of evidence is that "all relevant evidence is admissible." N.C.R. Evid., Rule 402 (2000). Whether or not evidence should be excluded is a matter within the discretion of the trial court. *Reis v. Hoots*, 131 N.C. App. 721, 727, 509 S.E.2d 198, 203 (1998). The trial court's ruling will be reversed only upon a showing that it was so arbitrary that it could not be the result of a reasoned decision. *Id.* at 727, 509 S.E.2d at 203; *Sitton v. Cole*, 135 N.C. App. 625, 626, 521 S.E.2d 739, 740 (1999).

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." 2 Kenneth S. Broun, Brandis & Broun on North Carolina Evidence § 192 (5th ed. 1998). If a statement is offered for some purpose other than proving the truth of the matter asserted, it is not inadmissible hearsay. *Southern Ry. v. Biscoe Supply Co.*, 114 N.C. App. 474, 442 S.E.2d 127 (1994) (citations omitted).

Here, Plaintiffs contend that the school records were offered in violation of Rule 803(6), the business records exception. Rule 803(6) allows records to be admitted if: 1) it is a record of acts, events or conditions; 2) it is made at or near the time [of the act, event, condition]; 3) it is made by a person with knowledge; 4) it is kept in the regular course of business; 5) it is the regular practice of that business to

make such a report and 6) it is shown by the testimony of the custodian or other qualified witness. N.C.R. Evid., Rule 803(6) (2000).

Defendants contend that the school records were not offered for the truth, but offered to impeach the testimony of Christopher's mother, Cathy Sterling. The main purpose of impeachment is to discount the credibility of a witness for the purpose of inducing the jury to give less weight to his testimony. "Any circumstance tending to show a defect in the witness's perception, memory, narration or veracity is relevant to this purpose." *State v. Looney*, 294 N.C. 1, 15, 240 S.E.2d 612, 620 (1978) (quoting Stansbury, *North Carolina Evidence*, Brandis Rev. §§ 38, 42, 44). In the present case, the school records were offered by the defendants to impeach Ms. Sterling's testimony that 1) the only problem Christopher had at the Waldorf School related to difficulties with a single teacher and 2) his most significant problem after the accident, which was not present before, was becoming easily frustrated which sometimes turned to anger. Therefore, we find that the records were offered not for the truth of the matter asserted, but to impeach the testimony of Ms. Sterling and thus they were not inadmissible hearsay. Accordingly, we conclude there was no error by the trial court in permitting the introduction of the school records.

**[2]** Additionally, we find that the subsequent publication of the school records to the jury was "invited error" by plaintiffs. Invited error is not grounds for a new trial. *See Overton v. Overton*, 260 N.C. 139, 132 S.E.2d 349 (1963); *Brittain v. Blankenship*, 244 N.C. 518, 94 S.E.2d 489 (1956); *Sumner v. Sumner*, 227 N.C. 610, 44 S.E.2d 40 (1947). In the present case, the trial court initially sustained plaintiffs' objection to the records being passed to the jury. However, during redirect of Ms. Sterling, plaintiffs implied that defendants had concealed favorable records from the jury. At that point the judge allowed the distribution of copies of the school records to the jury. Plaintiffs made no further objection to the publication of the records to the jury. N.C.G.S. § 8C-1, Rule 103(a)(1) requires one to make a timely objection to admission of the records into evidence to preserve the alleged error for appellate review. Therefore, by not objecting to their publication to the jury the plaintiffs forfeited the right to appeal the question of the admissibility of the school records.

**[3]** With respect to items not included in the pre-trial order, whether to admit such evidence is entrusted to the discretion of the trial court. The trial court's decision will not be reviewed unless an abuse of dis-

**STERLING v. GIL SOUCY TRUCKING, LTD.**

[146 N.C. App. 173 (2001)]

cretion is shown. *Beam v. Kerlee*, 120 N.C. App. 203, 214, 461 S.E.2d 911, 920 (1995) (*citing Pittman v. Barker*, 117 N.C. App. 580, 588, 452 S.E.2d 326, 331 (1995)). In the present case, plaintiffs also objected to admission of the school records on the grounds that they were not on the pre-trial order. The trial court responded that plaintiffs would be given an opportunity to look at them. However, plaintiffs did not argue that they were surprised by the presentation of the school records, nor did they request additional time to investigate and prepare rebuttal evidence. Therefore, we find that there was no abuse of discretion by the trial court.

## B.

**[4]** Next, plaintiffs argue that the trial court erred in permitting the introduction of an article by Carl B. Dodrill, Ph.D., entitled "Myths of Neuropsychology". Plaintiffs make two contentions in support of their argument: 1) that the article was not qualified as reliable authority by any witness and therefore it was hearsay; and 2) that the article was not included in any pre-trial order. We disagree.

N.C.G.S. § 8C-1, Rule 803(18) Learned Treatises states:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(18) To the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

"[W]hen no specific precedent exists, scientifically accepted reliability justifies admission of the testimony . . . and such reliability may be found either by judicial notice or from the testimony of scientists who are experts in the subject matter, or a combination of the two." *State v. Bullard*, 312 N.C. 129, 148, 322 S.E.2d 370, 381 (1984) (citations omitted).

Dr. Stephen Hooper testified for the defense as an expert in the area of neuropsychology. His testimony established the Dodrill article as reliable scientific authority. Therefore, a proper foundation was

established for the admission into evidence of the Dodrill article pursuant to the requirements of Rule 803(18). Thus, the article was not inadmissable as hearsay and we find no error in the Court's admission of this scientific article.

## C.

**[5]** Finally, plaintiffs contend that the trial court erred in assigning all the costs of defendants Waldensian and Smith to plaintiffs rather than apportioning those costs to co-defendants and third-party defendants. We disagree.

Taxing of costs is governed by Article 6 of the North Carolina General Statutes. The relevant statutes are N.C.G.S. §§ 6-19 and 6-20 (1986). N.C.G.S § 6-19 provides:

6-19. *When costs allowed as of course to defendant.*

Costs shall be allowed as of course to the defendant, in the actions mentioned in the preceding section [6-18][2] unless the plaintiff be entitled to costs therein. In all actions where there are several defendants not united in interest, and making separate defenses by separate answers, and the plaintiff fails to recover judgment against all, the court may award costs to such of the defendants as have judgment in their favor or any of them.

N.C.G.S. § 6-19 (1986).

The awarding of costs to a defendant in a personal injury suit, like the one at bar, is not covered by N.C.G.S. § 6-19. Costs not allowed as a matter of course to a defendant under N.C.G.S. § 6-19 may be allowed in the court's discretion under N.C.G.S. § 6-20 (1986). The court's discretion under N.C.G.S. § 6-20 is not reviewable on appeal. *See Minton v. Lowe's Food Stores, Inc.*, 121 N.C. App. 675, 468 S.E.2d 513, *disc. review denied*, 344 N.C. 438, 476 S.E.2d 119 (1996) (*citing Chriscoe v. Chriscoe*, 268 N.C. 554, 151 S.E.2d 33 (1966)).

Plaintiffs erroneously rely on *Hughes v. Oliver*, 228 N.C. 680, 47 S.E.2d 6 (1948), for the general proposition that costs should be shared equally between cross claimants. *Hughes* was tried on a narrow set of facts: two families were fighting over two disputed pieces

---

2. N.C.G.S. § 6-18 allows costs as a matter of course to plaintiff in the following cases: actions for recovery of real or personal property, intentional tort actions, actions involving commercial paper, and actions brought for the protection of animals.

STERLING v. GIL SOUCY TRUCKING, LTD.

[146 N.C. App. 173 (2001)]

of land; the two families filed lawsuits against each other—one for ejectment by heirs of the mortgagor and the other for foreclosure—in which the heirs were defendants; the two actions were consolidated for trial; and the plaintiffs in both cases won at least partial recovery. Based on those specific facts, the Court held that the costs in the two cases should be divided equally between the parties. *Id.* at 688, 47 S.E.2d at 12.

Taxation of costs has been held to be within the trial court's discretion where the reviewing court's decision was partly in favor of three parties and wholly in favor of two more, and all costs could be imposed upon one of the three parties who did not wholly prevail. *Pee Dee Elec. Membership Corp. v. Carolina Power & Light Co.*, 256 N.C. 56, 122 S.E.2d 761 (1961).

In the case subjudice, a jury determined that Waldensian and its driver, Smith were not liable in this personal injury case. As stated above, N.C.G.S. § 6-19 does not allow costs as a matter of course to defendants in personal injury action. Therefore, Waldensian and Smith made a motion pursuant to N.C.G.S. § 6-20 to have the costs taxed to plaintiffs. The trial court specifically stated that the costs of Waldensian and Smith were taxed against plaintiffs in the court's discretion. The trial court's exercise of discretion under N.C.G.S. § 6-20 is not reviewable on appeal. *See Minton* at 675, 468 S.E.2d at 513 and *Chriscoe* at 554, 151 S.E.2d at 33.

II. Appeal by Soucy Trucking and Caron
(COA00-886 and COA00-963)

Defendants Soucy Trucking and Caron appeal from the post-judgment settlement between the plaintiffs and third-party defendants Jennifer and Clayton Lowman in COA00-886, and from post-judgment settlement between plaintiffs and third-party defendant West in COA00-963. They raise two main assignments of error in each appeal: (A) that the trial court erred in concluding that the post-judgment settlements complied with the Contribution Statute, N.C.G.S., Chapter 1B; and (B) that if the post-judgment settlement orders are allowed to stand and if the judgment is reversed, the case may be tried again and a higher verdict awarded in which case Soucy Trucking and West would be deprived of their right to contribution from the Lowmans and West. Because Soucy Trucking and Caron make the same argument in each appeal, we address the two assignments of error simultaneously.

STERLING v. GIL SOUCY TRUCKING, LTD.

[146 N.C. App. 173 (2001)]

A.

**[6]** Soucy Trucking and Caron argue that the trial court erred in approving the post-judgment settlements by the plaintiffs with the third-party defendants, the Lowmans and West. They argue it was error to conclude that the settlements were proper under the contribution statute and that they constituted a full release.

Soucy Trucking and Caron contend that the outcome of their appeal is governed by the holding in *Medical Mutual Ins. Co. of N.C. v. Mauldin*, 137 N.C. App. 690, 695, 529 S.E.2d 697, 700 (2000), *aff'd per curiam*, 353 N.C. 352 (2001). We will not discuss *Medical Mutual* as our Supreme Court has determined it is without precedential value. *Id.* at 353

The Uniform Contribution Among Tortfeasors Act, N.C.G.S. § 1B, Article 1, (the Contribution Statute), which governs the law of contribution in North Carolina, states that "[t]he right to contribution exists only in favor of a tort-feasor who has paid more than his pro rata share of the common liability." N.C. Gen. Stat. § 1B-1(b) (1999). Thus, in order to seek contribution, a joint tort-feasor must show it has paid more than its pro-rata share. *See Jones v. Shoji*, 336 N.C. 581, 586, 444 S.E.2d 203, 206 (1994). Therefore, it is clear that a contribution action is separate from the initial liability action, and the right to seek contribution arises *only* when one joint tortfeasor has paid *more* than its share of the judgment. N.C.G.S. § 1B-1(b). Because defendants have not paid their share, have suffered no harm, the issue of contribution by third-party defendants (Jennifer and Clayton Lowman and West) is not ripe for resolution by this Court.

In the present case, the jury returned a verdict in favor of the plaintiffs and against the three defendants (Soucy Trucking and Caron, the Lowmans and West) finding them to be jointly and severally liable in the sum of sixty-two thousand five hundred dollars ($62,500.00). Plaintiffs appealed the verdict on the issue of damages and thereafter entered into post-judgment settlements with the third-party defendants, Jennifer and Clayton Lowman and West. The Lowmans and West paid their full pro-rata share of the total judgment costs and interest. Soucy Trucking and Caron have yet to pay anything.

Based on the foregoing facts, we find that this issue is not ripe for resolution by this Court. Soucy Trucking and Caron have not paid

their share, they have suffered no harm and cannot yet pursue a contribution claim. Thus, the trial court's approval of the post-judgment settlements did not affect defendants, and they cannot attack their joint tort-feasors' attempts to settle with plaintiffs. *See* N.C. Gen. Stat. § 1-57 (1999) (limiting actions to real parties in interest); *Parnell v. Insurance Co.*, 263 N.C. 445, 448-49, 139 S.E.2d 723, 726 (1965) (noting that a real party in interest is one who is benefitted or injured by the judgment). Defendants' contention that they *might* be forced to pay more than co-defendants *if* plaintiffs successfully appeal the damages issue and *if* a new jury awards plaintiffs more than the original verdict is too tenuous an assumption to support defendants' standing to assign error to the trial court's approval of the post-judgment settlements. Therefore, as this issue is not yet ripe and defendants do not have proper standing, any opinion issued at this juncture would be advisory, in contravention of well-settled case law. See *Funk v. Masten*, 121 N.C. App. 364, 365, 465 S.E.2d 322, 324 (1996). As such, this assignment of error is overruled.

## B.

[7] Next, Soucy Trucking and Caron argue that the trial court erred in its 23 May 2000 and 6 July 2000 orders in concluding that the post-judgment settlements between the plaintiff and the third-party defendants (Jennifer and Clayton Lowman and West) constitute a full release given in good faith pursuant to N.C.G.S. § 1B-4 because Soucy Trucking and Caron were not given the same opportunity to settle for a like amount. Appellant counsel's argument on the issue is the same as to each third party defendant, therefore we address the issue collectively.

The Uniform Contribution Among Tort-Feasors Act is silent as to what constitutes "good faith". *Brooks v. Wal-Mart Stores, Inc.*, 139 N.C. App. 637, 644, 535 S.E.2d 55, 60 (2000). To determine if a settlement is made in good faith, the *Brooks* court adopted a 'totality of the circumstances' approach "which involves consideration of all available relevant facts,[ ]and 'places [both] the decision of whether or not a settlement is made in good faith,' [ ] and what 'type of proceeding [to] conduct to determine good faith in an individual case,' [ ] in the sound discretion of the trial court." (internal citations omitted). *Id.* at 646, 535 S.E.2d at 62. Accordingly, a finding that a settlement was made in good faith pursuant to N.C.G.S. § 1B-4 may be reversed only if the court's ruling is so arbitrary that it could not be the result of a reasoned decision. *Id.* at 647, 535 S.E.2d at 62. (citations omitted).

In the present case, the trial court held hearings and found that both settlements were made in good faith and in the best interest of the minor Plaintiff. The transcripts of the settlement hearings reveal that the trial court gave careful consideration to the proposed settlements and to the potential ramification of the settlement should a new trial be ordered. The approved settlements were for the precise amount of the third-party defendants' pro rata share of the jury verdict. Soucy Trucking and Caron had the burden of proving that the settlements were not made in good faith. *Wheeler v. Denton*, 9 N.C. App. 167, 170, 175 S.E.2d 769, 772 (1970). However, the trial court by its ruling concluded defendants had not met their burden. "The mere showing that there has been a settlement" between an injured party and a tort-feasor is insufficient to "show that there has been a lack of good faith" in the settlement. *Wheeler* at 171, S.E.2d at 772.

We find that the trial court's determination that the settlements were made in good faith appear to "have been the result of a reasoned decision." *Brooks* at 647, 535 S.E.2d at 62. Accordingly, we hold that the trial court did not abuse its discretion in approving the post-judgment settlements between plaintiffs and third-party defendants and thus we conclude there was no error.

NO ERROR.

Judge TIMMONS-GOODSON concurs.

Judge GREENE concurs in the result with a separate opinion.

GREENE, Judge, concurring in the result.

I believe: (I) Christopher's records from the Emerson Waldorf School (School) were inadmissible hearsay, and (II) plaintiffs' post-judgment settlements with the Lowmans and West were not sanctioned by Chapter 1B of our General Statutes. Nonetheless, as plaintiffs have not been prejudiced by these errors, I concur in the result.

I

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c) (1999).

## STERLING v. GIL SOUCY TRUCKING, LTD.

[146 N.C. App. 173 (2001)]

In this case, one of the defendants, while cross-examining Cathy Sterling (Sterling) about her testimony regarding Christopher's post-accident behavior, read from Christopher's School records. The information contained in these records tended to contradict Sterling's testimony given on direct. Plaintiffs argue on appeal that these School records constitute inadmissible hearsay, even if used for impeachment purposes during the cross-examination of a witness. I agree. Defendants were challenging the veracity of Sterling's testimony using the School records. Defendants, therefore, were offering the School records as the truth of the matter and, thus, these records were properly used for impeachment purposes only if admissible under some exception to the hearsay rule. Defendants, however, made no effort to qualify the records under any recognized hearsay exception, and plaintiffs failed to object at trial to the use of these records on the grounds they were inadmissible hearsay.[3] Accordingly, plaintiffs cannot now do so on appeal. *See State v. Campbell*, 296 N.C. 394, 399, 250 S.E.2d 228, 231 (1979) ("the admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character").

II

Defendants Soucy Trucking and Caron's appeal raises an issue not yet determined by our appellate courts: whether a plaintiff may settle with fewer than all of the defendants after the liability of multiple defendants has been established by the trial court as joint and several. Section 1B-4(2) of the North Carolina General Statutes provides that if the plaintiff gives, in "good faith," a release to one of two or more joint tort-feasors, this release "discharges the tort-feasor . . . from all liability for contribution to any other tort-feasor." N.C.G.S. § 1B-4(2) (1999). On the other hand, section 1B-3(f) provides that once a judgment is entered establishing the joint and several liability

---

3. When defendants first attempted to cross-examine Sterling about the School records, plaintiffs objected on the grounds they were "not part of discovery and . . . not on the pretrial order." After some extensive examination of Sterling about the School records by defendants, plaintiffs did object to the use of "an unwritten report [contained in the School records] that we've never seen." This objection was overruled and defendants were allowed to read the unwritten report to Sterling. This "unwritten report," however, did not contain any information that had not already been admitted into evidence. I note plaintiffs did, at the beginning of defendants' examination about the School records, object to defendants distributing copies of the School records to the jury, although the objection was sustained by the trial court. Later, defendants again requested permission to pass to the jury the School records and plaintiffs did not object at that time. Thus, plaintiffs cannot, on this record, complain about the use of the School records to cross-examine Sterling or their distribution to the jury.

of multiple defendants, that judgment "shall be binding as among such defendants in determining their right to contribution." N.C.G.S. § 1B-3(f) (1999). If section 1B-4(2) is read to include post-judgment releases, the release of one of the joint tort-feasors in exchange for his pro rata share of the initial judgment could result in the remaining joint tort-feasors being liable for a larger contribution in the event of a new trial. For example: a judgment is entered against three defendants for $100,000.00 based on a joint and several liability jury verdict. The plaintiff appeals the case and on appeal, settles with defendant A for its pro rata share of the $100,000.00 verdict and provides defendant A with a release. Subsequently, the appellate court orders a new trial on the issue of damages and on retrial, the jury awards plaintiff $300,000.00 against defendants B and C. Are defendants B and C entitled to seek contribution from defendant A for $100,000.00, a pro rata share of the new verdict, on the grounds their joint and several liability was established in the first judgment? One reading of section 1B-4(2) would suggest defendants B and C are not entitled to any contribution because the release of defendant A discharges his liability for any contribution to defendants B and C. Such a reading, however, directly conflicts with section 1B-3(f), which sets contribution rights once joint and several liability is established. Accordingly, section 1B-4(2) must be read to apply to only pre-judgment settlements, *see Wheeler v. Denton,* 9 N.C. App. 167, 170-71, 175 S.E.2d 769, 771-72 (1970) (setting out contribution rights of joint and several defendants where plaintiff settled with one defendant prior to trial), as the entry of a judgment against two or more joint tort-feasors necessarily fixes a defendant's right to contribution for any amount paid in excess of his pro rata share, *see* N.C.G.S. § 1B-1(b) (1999). To hold otherwise would permit the injured plaintiff party to "apportion the loss among joint tort[-]feasors as he sees fit," an option inconsistent with Chapter 1B. *See Bishop v. Klein,* 402 N.E.2d 1365, 1372 (Mass. 1980).

In this case, plaintiffs were not authorized to settle post judgment with defendants West and Lowmans and the trial court therefore erred in approving the settlements. Because, however, we have not ordered a new trial in this case, defendants Soucy Trucking and Caron have not been prejudiced by the settlements as they cannot be required to pay an amount in excess of their pro rata share of the judgment.[4]

---

4. Had we ordered a new trial on damages, because of the likelihood of a new judgment in excess of the $62,500.00 judgment, the settlement would have been null and void and all defendants would have been a party of that new trial.